First Circuit.

THAYER vs. JASON SWIFT, and others.

Thayer.
vs.
Swift.

This court will not entertain a judgment creditor's bill until the judgment creditor has fully exhausted his remedy at law. It is thus fact that gives the court jurisdiction in this class of cases; and it has been repeatedly held that the court will not sustain a bill as a judgment creditor's bill merely filed before the return day of execution, and it is not sufficient that the execution shall have been actually returned before the return day.

Courts of chancery have held in every adjudged case's that the judgment creditor must show a strict and rigid compliance with the rules and forms of law, before it will administer the harsh remedy of depriving the debtor absolutely of all control over every part and portion of his property.

Where a lien has been acquired by the levy of an execution, or where there is an out-standing execution in the hands of an officer, and a fraudulent obstruction has been interposed to prevent its being levied, there can be no doubt that a bill may be filed in this court for a discovery and to remove such obstruction.

The ground, and only ground upon which injunctions are granted against third persons in possession of personal property and ostensibly its rightful owners, upon an *exparte* application, is for the protection of the fund or property when shown to be in danger without this interposition.

It makes no difference whether goods are converted into money or not, trustees are equally responsible to creditors whose rights to the goods or their proceeds are established, and if the proceeds be paid away by the trustees *pendente lite*, they are held responsible; and where there is no allegation that the trustees are insolvent, transient or irresponsible, or that the fund is in a hazardous condition, an injunction will not be granted or sustained.

The complainants obtained a judgment against the defendant Swift in the Circuit Court for the county of Washtenaw, on the 13th December, 1839, for $686,44 damages, and $43,72, costs of suit. On the 31st of December, 1839 a *fi fa* was issued, directed to the Sheriff of Washtenaw county, where Swift resides, against the goods and chattels, lands and tenements of Swift, and delivered to J. K. Wallace, Deputy Sheriff, on the first day of January, 1840. The execution was returnable on the first Tuesday of May, 1840. On the 20th April 1840, the Sheriff by his deputy returned on said writ, " that there was no goods, and chattels, lands, and tenements to be found in his bailiwick to secure or pay the sum due the complainant or any part thereof, to his knowledge, after diligent search." The judgment remains in full force, and wholly unsatisfied.

The bill states that the defendant Swift has a considerable amount of property, real and personal, which he keeps concealed, and par-

ticularly that he deeded to the defendant Banister, a lot in the village of Dexter, without consideration, for the purpose of keeping the same out of the way of his creditors. That since making the deed, Swift has remained in possession, and has erected thereon a brick house and paid for the same out of his own means, though the whole business has been carried on in the name of Banister. The improvements are supposed to be worth from $1500 to $2000. The bill alleges certain other property has been purchased by Swift in the name of Banister, for the purpose of defrauding his creditors.— The complainants charge that all the property described, as in the name of Banister, is held in trust by him for Swift, and that he has also a large amount of notes, accounts, &c. belonging to Swift, which he is collecting for Swifts benefit. The prayer is in the usual form of a judgment creditors bill.

Motion for Receiver by complainants.

Motion for dissolution of injunction by defendants.

MILES & WILLSON, for defendants.

THE CHANCELLOR.—The various questions presented under this motion involve principles of the most important and complicated character.

The consequences flowing from their decision either the one way or the other, are of great importance. It is to be regretted that this question is presented under circumstances which preclude that careful examination of authorities, and that deliberate reflection which the subject demands.

Under these circumstances, I shall confine myself to the consideration of such portions of this case, as may be required by the present exigency.

The first question presented is, can this bill be sustained as a judgment creditors bill merely. The foundation of the jurisdiction of this court in this class of cases is, that the judgment creditor shall have fully exhausted his remedy at law. It has been repeatedly held that the court will not retain a bill as a judgment creditors bill merely, filed before the return day of the execution. In the absence of any authority or dicta upon the subject, I should have as little doubt upon a case where the execution was actually returned before the re-

turn day, although the bill was not filed until after the return day had elapsed. Courts of Chancery have held the judgment creditor in every adjudged case, before administering this harsh remedy of depriving the debtor absolutely of all control over every part and portion of his property, to bring himself strictly and rigidly within this rule.

No case can be found where this remedy has been afforded without a strict compliance with all the forms. What is the reason of the rule? It is that a judgment debtor shall not be harrassed with a suit in Chancery until the creditor has availed himself of all his common law rights to collect his judgment. The only *dicta* to be found which has ever led to any doubt upon this subject is to be found in the opinion of Chancellor Walworth in the case of *Cassidy* vs. *Meacham* 3 *Paige* 312. This idea is thrown out under a perhaps, and rather as a speculation than as a decision. He says *perhaps* a return made before the return day, may be good by relation. But if we once depart from the well settled rule, that the creditor shall fairly and fully first exhaust his remedy at law, where shall we stop?

Will it answer that the execution may be issued, delivered to an officer, and immediately returned, and slumber in the files of the court until after the return day has passed, and then become good by relation, notwithstanding the debtor may have been in possession of property on which to levy the execution. There is no other safe course to adopt in administering this severe remedy, but to adhere to the well established principles which govern this class of cases; and I think the rule is too well established to be overturned, by a speculative expression of this kind, which formed no part of the decision, and was unnecessary in the case. The fact that a suit of this kind has never been sustained as far as we can find, is not without its importance. I place some reliance on the manuscript case cited from New York.

I have very little doubt it is correctly reported, and entirely concur in the reasoning. This is the first time I have been called upon to decide this question. Its decision is now unavoidable, and as it is now decided, must be the rule in future cases upon this subject. I entertain no doubt as to what should be the rule.

The next question whether under the allegations contained in this bill, the complainant can call upon the other defendants the alleged trustees of the judgment debtor, is of a much more grave and important character.

If a levy had been made, and an actual lien thus been acquired, there could be no doubt.

If there was an outstanding execution in the hands of the officer, and the bill had been filed for a discovery and to remove fraudulent obstructions interposed to prevent its being levied, there could, on general principles exist but little difficulty. Here it is not avered that there has been any attempt to levy this execution upon this property, and there is no outstanding execution in aid of which the extraordinary powers of this court are invoked. I am inclined to think however, and to hold for the purpose of this motion, that the complainant, under the showing contained in his bill may sustain it for the purpose of making this trust property available, if it really has any existence, for the liquidation of his judgment.

It is however urged that the injunction granted in this case against the assignees, is neither required nor justified by the allegations contained in the bill. The ground and only ground, upon which injunctions against third persons in possession of personal property and ostensibly its rightful owners upon an *exparte* application, are granted, is for the protection of the fund or the property, when it is shown to be in danger without this interposition.

Here there is no allegation that these trustees are insolvent, transient, or irresponsible. It was held in the case of *Haddon* vs. *Spader* 20 *John. R.* 570, that it makes no difference whether the goods are converted into money or not; the trustees are equally responsible to the creditor if he establishes his right to the goods or their proceeds, and if paid away by the trustees *pendente lite*, they are held personally responsible. Under these circumstances, it should certainly be required in order to sustain an injunction which may operate with such extreme severity, that it should be shown, that the fund is in a hazardous condition. Such has been the usual practice of the court. But as certain real estate, the title to which is not vested in these trustees, is alleged to belong to this judgment debtor; and any transfer or incumbrances upon that, may lead to the necessity of making new parties, the injunction in that respect may stand until the coming in of the answer. It results then that the bill cannot be sustained as a judgment-creditors bill merely.

That the general injunction against Swift must be dissolved.    That the injunction against the other defendants be dissolved, except so far as relates to the real estate alleged to be the property of the defendant Swift.

That the motion for the appointment of a Receiver as against Swift, must be denied, and as the other defendants' in opposition to the motion for a Receiver, deny absolutely having or holding any property, rights, credits or effects, of Swift of any kind, a receiver of the alleged trust property cannot be granted until they have an opportunity of answering the bill.